This case number 417-0035, the people of the state of Illinois versus Donald Sturgeon. And for the appellant we have Mr. Bernstein and for the athlete, Ms. Brooks. You may proceed, counsel. Good morning, your honors. Counsel, may it please the court, my name is Joshua Bernstein. I represent Donald Sturgeon, who is the appellant in this case. I intend to focus on the first and second arguments of my brief, which are the sentencing argument and the proof beyond a reasonable doubt ineffective assistance argument. But if your honors have any questions about the fines and fees argument, I will happily answer them. I'm going to proceed as if this court is going to follow its holding in Johnson and find that the reasonable doubt argument here was waived and focus really on the ineffective assistance aspect of this. Because I think in the larger context of this case, counsel's failure to challenge the distance of the school from the house and the amount of methamphetamine found inside the house, in light of Counsel, when you say counsel's failure to challenge that, how do you suggest counsel should have gone about challenging that? I think, your honor, what counsel should have done is evidenced in the way counsel rigorously attacked the fact that it may have been that this room was not Mr. Sturgeon's bedroom. He cross-examined the state's witnesses extensively on... So are you suggesting some cross-examination with respect to the distance? And the way... And the weight? Not some, your honor. I think the way both of those pieces of evidence were presented were egregiously deficient. And I guess I'm wondering if counsel had cross-examined regarding those matters, would that have provided the state an opportunity to shore up or strengthen its case and come back and possibly say, Oh, I did actually take a measurement of the distance. I measured it myself. The officer testifying to that or something of that nature. I think it's altogether possible and I think you're getting to prejudice, but the fact remains... Well, what I'm getting to is strategy. And of course, that has a significant relevance when it comes to allegations of ineffective assistance of counsel. Whatever the strategy may have been here. And as I said in my brief, I believe that counsel was operating under a strategy. I don't know what possible strategy would cause you to challenge one element of crime and not the other aggravating element. Well, I guess just thinking about it with respect to the allegations, you know, no one saw him cooking. You know, he was pulling up to the place when all this occurred. The facts are a lot different and the risk would be different than asking or going into, did you take a measurement or how do you know that that's the measurement? You see what I'm saying? I see what you're saying, but on the other hand, Mr. Sturgeon pled not guilty. And particularly, actually, Inspector Meister, who's the one who testified about the measurement, his testimony strikes me very much as the testimony of an officer who's trying to avoid hearsay. This is something that you often hear in course of investigation testimony. It's just not good enough to say, I learned. I have to say that when I read that, that his testimony was, I learned, that's very awkward. People don't talk like that. And so it definitely caught my eye, but I guess I'm concerned about the fact that we have to look at this in the light most favorable to the state. And so what inferences can be drawn from the statement, I learned? I think, Your Honor, the question of inferences really gets to the heart of this because we need measurements and we need scales because we cannot trust human beings to eye out a distance to weigh out something, especially to the kind of precision that's required to find someone guilty of an aggravating factor like the distance between the school and the house and the minimum or maximum amount of methamphetamine that's in the house. So I don't, you know, I don't think it's a reasonable inference to say that I learned suffices in any respect. There's no, there's absolutely no information about how he learned it. But wouldn't it be, I learned as a result of my personal investigation that this distance was 690 feet? That might be a somewhat awkward way of putting it, but it's not unheard of, is it? It's not unheard of. Especially when the preceding question was, what did your investigation reveal? That's true. I learned that it was 609 feet. I mean, in that context. Now, you're right that it seems to me a careful prosecutor wouldn't have let this hang, and it's the state's burden to prove this beyond a reasonable doubt. And were I in that role, I would think, you know, a good defense attorney might say, well, ladies and gentlemen, is this really enough? I mean, I learned and all the rest of this. But the jury apparently accepted it, could have bought it. But going to the prejudice prong that Justice Holder-White asked you about, I think these aren't really divisible. In order to establish ineffective assistance, don't you have to establish that had this line of inquiry been pursued, it would have been, yeah, well, Officer Smith told me it was 609 feet. In fact, if the line of inquiry had been, how did you learn that? Well, I took out a measuring tape and, you know, I measured it. Then what do you have by basis of ineffective assistance? You have nothing left, do you? I think this gets – I have to say, Your Honor, in 15 years of practicing law and years in front of this Court, I've not come across testimony like this. And what I go back to and what I think we have to go back to with respect to the inferences and respect to the prejudice is the burden on the state. Let me go back to the question I asked you. Had that been the test – had defense counsel said, what do you mean you learned? Someone else told you this? Oh, no. I went out with my own measuring tape and measured it myself. Would there have been anything left of your ineffective assistance claim? Well, I wouldn't be raising the claim because counsel would have cross-examined that. Okay. How about if this had been a post-conviction petition and the trial court were conducting a hearing on this claim and that had been the testimony of Meister. What did you satisfy? What did you learn? What did you mean by that? And then he said, oh, he went out and measured it. Did you learn it from some third party? Oh, no. Measured it myself. Won't be left of your claim. I'm not sure there would be anything left there, Your Honor. But I don't think the prejudice here is speculative because this was an aggravating factor that substantially increased Mr. Sturgeon's sentence. Whatever the end result of that would have been, had the state proved him guilty beyond a reasonable doubt, had the state said I used a roll of tape, I walked whatever, you know, however you use the roll of tape, which is the standard practice that I've been exposed to with respect to measurements, they would have proven the aggravating factor. But, you know, I'm coming from the position that there's a failure of evidence here and counsel let it go. That's a question of the sufficiency of the evidence, the failure of the evidence. I want to try to prove ineffective assistance of counsel when your entire basis is entirely speculative. And by that I mean you don't know, we don't know, what the further testimony of the officers in this case would have been on distance or weight had counsel pursued it. Yet you're asking us to reverse a conviction based on this entirely speculative argument you're making on this prejudice prop. And I should add, you've been at this a long time, counsel, I don't know of any case where ineffective assistance of counsel's prejudice prop has been carried where, as here, it is literally entirely speculative because we don't know what the answers would have been and had the answers been as they indicated, there would be no basis. Well, I think this kind of ties in a little bit to Miramontes, which is the case I cited in my brief. In that case, that was a weighing case. And so what was missing in that case was the testimony of the chemist who weighed the narcotics that were, you know, the weight of which was an element of that offense. And I think if you're not going to, you know, if you're saying that the prejudice is speculative here, I think if you take a look at Miramontes, that was a case in which there was an element missing and the first district reversed and remanded for a new trial. So. Well, that's a different, the facts were rather different. But going back to Justice Holderoid's question, let's assume, and I think a careful defense attorney would probably know this from discovery or maybe talking to these two cops in advance. Let's assume that defense counsel, in fact, knew that Meister had measured it and the other cop had weighed it and that there was, from police reports, let's say, that there's more here than what the prosecutor elicited. Would it be not only tolerable but smart defense conduct to avoid the subject entirely and get up and argue a closing argument? Ladies and gentlemen, as indeed was argued here, there are too many unanswered questions. How can you believe all this? Meister learned this stuff and about I didn't calibrate the weight. What does that all mean? This is proof beyond a reasonable doubt, et cetera. Wouldn't that be clever defense trial strategy? I think if you really, I mean, if we're talking clever defense strategy, counsel stipulated to the fact that Mr. Sturgeon had 36.5 grams of metham, of pseudoephedrine, which is the basis of the precursor count. And the evidence with respect to that had to do with, actually, the evidence of his arrest was really focused on whether he threw the jar of methamphetamine. But counsel stipulated to the fact that that was pseudoephedrine and what the weight was and didn't really challenge that it was found on him. If counsel was worried about getting into this, smart counsel might have stipulated if he knew that this was the distance and that the state would prove it and that somehow it would, you know. But you didn't answer my question. If counsel knew, as he might very well have known from police reports, that the state could have done a much better job of eliciting strength underlying these factors, he would be wise to avoid the subject entirely, would he not? I can see there being a strategic reason. Do we know whether he knew or not? Is there anything in the discovery that indicates that counsel, Meisner's report said, yeah, you know, I measured this distance and it was 609 feet is a little odd too, isn't it? I mean. 609 feet is very specific. Yes. So Joe told me that or I measured it myself. Those are the two options, aren't they? And if Joe told him that that's the distance, then counsel's certainly ineffective because that would be the piece of evidence you're claiming is missing, you know, the prejudice. Now I want to know, do we know, as Justice Geigman asked, do we know if there's more, if they actually had in the police reports that someone measured? We don't get the discovery, Your Honor. And I could find nothing in the record that I received, which is the record that you have before you, discussing anything about what counsel knew and didn't know. And I think this also ties in to the Detective Hayes' testimony about scale, which I think also shows, you know, it feels like tunnel vision to me that you would let this go and you also let the scale go without being challenged. I mean, the detective explicitly testified that he didn't calibrate it. He testified that he didn't calibrate it, but he testified that he checked using known weights, which seems to be pretty consistent with what the expert from the crime lab testified to as far as how they make sure that their scales are weighing properly. I'm not sure, standing here today, whether the crime lab chemist testified that she used a balance scale or a trometer scale. It was a physical scale. I think that person testified that once a week they test their scales, and I thought she said against known weights or something along those lines, very similar to what the officer testified he did. Did the officer understand? I mean, what does calibrate mean? Did the officer understand what calibrate means? I don't think the officer understood what calibrate means. There's also his statement, something along the lines of, I checked the internal parts with weights, which, you know, Your Honor, I will be honest here. I'm not an electronic scale expert, and I'm not exactly sure how you calibrate an electronic scale. I'm not exactly sure the jury understood how you calibrate an electronic scale. This is the problem. And the problem for whom? It seems to me if I'm the defense attorney and the question asked of the officers, and you calibrated this machine before you used it, and he says, not necessarily calibrated it, but I just checked it against the known weights, I'm not sure what that means. And once again, it seems to me a smart defense attorney thinking that this prosecutor has just left this hang there, this uncertainty and this seeming confusing response. I'm going to get up and argue that this is insufficient, ladies and gentlemen of the jury, to meet the state's burden of proof beyond a reasonable doubt. We don't know what this all means. And Mr. Smith, the prosecutor, didn't seek to clarify it, maybe because he knows that this officer didn't do it right or whatever. But why wouldn't pursuing this wind up just tuck-pointing the state's case to make sure parts that were left unsaid and perhaps confusing to the jury would now be all cleared up? Oh, well, that's the case. Now I understand it. I'm not sure the extent to which this played out in the closing argument that would suggest it's a strategy. But he certainly did not challenge the distance between the school and the house. I'm not sure where I'm at on time, Your Honors, but I would like to touch briefly on sentencing, if that's all right with you. You'll get the yellow light when you're almost out of time and then the red light when you are out of time. Right. I just don't know when the yellow light is. You know what, I haven't been watching either, so we'll see what happens. Very briefly, I think what I'd ask you to consider when you look at the sentencing here is the Hendrickson case, which is out of the District Court of Utah and which engages, admittedly in a federal context, in an examination of the mitigating effects of addiction on culpability. And I think the judge in that case is far more eloquent than I and goes into great detail about that. But I think the takeaway from the case from Hendrickson is that there is a great sense in which specifically methamphetamine, in fact, rewires the human brain to reduce the ability of a person to weigh the consequences of their actions with their short-term decisions. And the judge in that case actually analogizes it to the effects of youth, you know, Miller, Graham, and Roper, the lack of development of a young person's brain in that it takes away your ability to weigh consequences. And I think here the judge's statement in the sentencing hearing says everything about what he believes methamphetamine addiction is, and I think that is really, as I said in my brief, weaponizing an illness against might. Let me read something to you and ask for your thoughts regarding it in this same context. The Illinois Supreme Court 21 years ago wrote the following in People v. Shatner. The defendant's premise is that since drugs are partly to blame for his actions, the defendant is somehow less culpable and should not suffer the ultimate penalty for his criminal behavior. Simply stated, the sentencing judge was under no legal obligation to subscribe to this suggestion. To the contrary, the sentencing judge was free to conclude under the circumstances that the defendant's drug history simply had no mitigating value but was, in fact, aggravating. Should we disregard what the Illinois Supreme Court wrote on this subject 21 years ago? I think in 21 years, Your Honor, the science has advanced a great deal, and the understanding has advanced a great deal. So I guess the answer to my question is yes, we should disregard what the Illinois Supreme Court wrote 21 years ago? Yes, actually, I think you should. Well, I think that would have to be a carefully written opinion, counsel. I'm not sure it's a – I'm not familiar with that case, Your Honor. But I think that what this case shows is a failure of the judge to understand what addiction really is. I'm not contesting the fact that this man manufactured drugs and sold drugs. It's clear from his – Counsel, I'm sorry, you're out of time, but you will have additional time on rebuttal. Thank you, Your Honor. Thank you. Ms. Brooks? Did you need some water? I'm okay. Thank you. Sorry. Also, Ms. Brooks, appearing on behalf of counsel, thank you, and may it please the Court. With respect to the elements issue, the element of 400 grams or more was proved by the evidence of the officer who checked the scale against known weights, which is sufficient foundation for the testimony because it verified the accuracy of that scale. So there was no need to calibrate it if the officer checked it against known weights and found that it was accurate. So I think the calibration issue is kind of the red herring. It certainly does not mean that the proof was so unsatisfactory. Ms. Brooks, let me ask you the same question we asked Mr. Bernstein. The witness, Hayes, a police officer whose testimony was involved there, was asked, have you calibrated this machine before you used it? The answer, not necessarily calibrated it, but I just checked it against the known weights. What does that mean? Well, I think the answer was no, he did not calibrate it. Do we know what he – is it clear what he thought that term meant? I can't say that for sure, but I think his answer was no in terms of the question of whether he calibrated it because if he didn't even know what it meant, then he didn't do it. Well, what burden should there be on the prosecutor who has the burden of proving beyond a reasonable doubt to clear up loose ends like this? And if the prosecution fails to do so, how should we evaluate whether the evidence is sufficient? Well, this court has to review the evidence and see if the evidence is in the light most favorable to the prosecution. And here, where the challenge to the accuracy of the scale results in eliciting evidence that it was in fact checked against known weights, then it means that it can be reasonably inferred that the scale proved to be accurate, and that's enough to constitute the proof beyond a reasonable doubt. Whereas in the other case where there was no contest made on cross-examination with respect to the basis of the officer's opinion that the distance between the residence and the school was about 609 feet, it's incumbent upon the defense there, which is why we have the claim of ineffective assistance, to have challenged the basis and the foundation for that opinion. And even if it had been hearsay, it would still constitute proof if it was not objected to. So they do not get automatic reversal or outright reversal on the basis of the failure of the defense attorney to challenge the foundation for the officer's opinion, because the officer's opinion constitutes the proof beyond a reasonable doubt. It was not rebutted. It was not contested. Was the officer giving an opinion? I learned it was 609 feet. That doesn't sound like an opinion to me. Well, even if he was essentially reflecting another officer's opinion based on their investigation, it's still... If I keep using this term opinion, it seems to me that we're in an area now that this is not opinion, this is fact. One guy about the distance of 609 feet, someone measured it, and it's a fact, or it isn't? Well, if it was in fact measured, which is not clear from the record, then it could constitute, as you said, facts. However, here... So you're saying that the state didn't have any obligation to offer a measurement? To offer proof that it in fact had been measured? Well, for example, the hypothetical could be that the house was across the street from the school, and the officer eyeballed it and thought it was less than 50 feet. And then their claim is, well, absolute proof is necessary that it had to have been measured with a calibrated measuring wheel, and lacking that, the state failed to prove beyond a reasonable doubt that the house was within 1,000 feet of the school. Well, this court would probably say, well, understanding the jurors' common sense and understanding their experience with how wide a street is, for example, they would know that it was within 1,000 feet. Well, here it was 609, which is not close to 1,000. If the testimony was about 950, 980... But if 609 speaks of a specific measurement, it certainly doesn't sound consistent with someone's opinion. That's true. Your example is, I don't think, helpful to our resolution of this. Where did the 609 come from? Is this his own efforts, or is this something he was told? Well, the point is, about 609, it's two things. It's about, but it's also more the specific number 609. It's not about 500. 609 is a more specific number, which implies you can infer that there had been a measurement, because 609 is a specific number, but the word was about. Does that mean that it was approximated? Does that mean... Well, Mr. Bernstein's implicit argument is that had the defense counsel not followed up on this and asked, what do you mean you learned? Is that what someone told you? Well, yes, the counsel could have and would have moved to strike all of this as improper hearsay, which would be, sounds like a good objection to me, and instruct the jury to disregard it, and the state would be left with, at least at that point in proceedings, no evidence at all of a distance requirement. Isn't that the sequence that he's suggesting? If that had been the answer, wouldn't he be correct? I'm sorry, I lost the trail of the question. The trailer is, so, officer, you said 609 feet. Is that something you were told? Is that where that figure comes from? And he says, yes. Okay. At that point, trial counsel should have moved, would have moved, objected to this testimony, it's an admissible hearsay, asked that it be stricken, jury instructed to disregard. I'm the trial judge. I think that's all correct. And then at that point in the proceedings, the state would be without any evidence to prove this aggravated infection, wouldn't it? Not necessarily, because at that point the trial's not over. Well, that's right. Somebody could actually present evidence, but we're talking about not opinion, we're talking about a specific figure here, and where did it come from? Doesn't the state have to provide to meet its burden of proof some foundational testimony as to where this came from so that the jury has more than, it sounds like it probably came from his own efforts as opposed to hearsay. Well, I was wondering about the situation where if the officers asked, did you learn it was within 1,000 feet? And the answer is yes, and that's all we have. But that's all the evidence we have. The only evidence in the record is that it was within 1,000 feet. I mean, that's even less specific, but the state's position, that's still proof. What should this court say or do with regard to our, and I can speak for all my colleagues, but my unhappiness with this record that has all of this uncertainty in it, matters that shouldn't be uncertain at all. I mean, how do we, you know, trying serious criminal cases is a serious business. You would think that one of the missions for prosecutors ought to be don't leave uncertainties, counsel, address them. Right, but in terms of the sufficiency of this argument, the record in a light most favorable to prosecution, taking all reasonable inferences in favor of the prosecution, here about 609 feet, the inference is this had been measured. It doesn't necessarily say who measured it, it had been measured. And so we have a measurement. This is not just like an eyeball opinion. This is inferentially a measurement. And taken in a light most favorable to prosecution, it is so far away from 1,000 that a reasonable doubt of guilt does not remain. So basically it's your position that in hearing that testimony, the jury could infer that the officer had measured this distance and learned as a result of that measurement what the distance was. That some officer had measured it, not say this officer. But constituting proof, that's the only requirement is it's proof. Whether it was another officer or not, it came in as proof without objection. So, I mean, that's really the only question, whether it's proof. The separate question here on ineffective assistance, they're stuck with this record. This record has so many unanswered questions of what defense counsel would have known, like, for example, police reports. And because the record doesn't show what additional questioning would have revealed, you cannot presume, the court cannot presume that the additional questioning would have elicited favorable information to the defendant instead of something that would have just shored up the uncertainties in the record. That goes back to the question I was asking Mr. Bernstein. Do we know from the record you've had occasion to look at, if there was anything in the record which would suggest that had it been pursued by defense counsel that the officers would have said, oh, yeah, well, this is how I measured it, or this is how I checked out the weight to make sure, to clear up these uncertainties. Do we know one way or the other as far as anything in the record? I do not from my review of this record because I don't think police reports are generally included in the record anymore, perhaps a long time ago when they were, but this is not a situation where this court has any means of knowing that as far as my understanding. So we can only speculate as to what that line of inquiry would have produced? That is, defense counsel pursued this line of inquiry, as Mr. Bernstein suggests, of these two officers? Right. This is the problem with trying to raise ineffective systems on direct review. I understand they have to do it to preserve it for post-conviction, but this court cannot grant any trial on the basis of a record that does not overcome the presumption of strategy because there's no basis for understanding whether counsel's conduct was unreasonable because the record doesn't show what was in the police report, for example, that would have presumably reached the counsel. And also cannot determine whether there's prejudice because that's an important element. Would he have been found guilty of the elements if further inquiry had been made? If we don't know the answers to what the further inquiry would have made, then we don't have any basis of ascertaining whether that would have made any difference in the outcome of the proceeding. So although it would have been incumbent on the defense to challenge the foundation of the opinion, it cannot be determined whether the counsel's conduct was unreasonable because if counsel knew, for example, that it would have, if it were in fact the case from discovery, he would have known that further, he could have been undercutting his own argument, whereas he could have just argued the lack of, the uncertainty as a matter of reasonable doubt to the jury, whereas if he'd shored that up for the prosecution, then that would have actually possibly been ineffective to do so. So this is the type of case that would be more ideal for the defense to pursue as a post-conviction argument and not on direct appeal, the Miramontes case to rely on, where it was obvious on direct appeal, I believe that might have been a direct appeal case, but even if it was a direct appeal case, stipulating the weight, which there's no stipulation here as to these sort of elements that are at issue in this appeal, but stipulating the weight after they had been commingled but before they had been weighed independently, that isn't effective because there's no way for the state in Miramontes to prove the weight of the evidence after it had been commingled because there was not an opportunity for independent testing prior to the commingling. That stipulation is objectively reasonable and the record would have supported that in that case and that's why it could be resolved. That's the complete opposite of the situation here where the record is not adequate to show their claim of ineffective assistance and the record itself was sufficient, the evidence in the record was sufficient to meet the standard for proof beyond reasonable doubt. I have a question. The last measurement case that I specifically remember involved a measurement and it involved a dispute over where the officer measured to was actually school property. But it was an open line of vision from where the sale took place to where the property was measured. Here, one would presume that there's not an open line of vision from a 7th street to a 5th street when there are houses or buildings or some structure in between, unless there were a park or something like that. So how do you measure? Well, to the real property comprising a school. So that point can be fixed, but the opposite end is more open-ended. Well, the opposite end is more open-ended, but I'm asking, is it as the crow flies? Because you can't possibly use a surveys measure, you know, one of those rolls if you're having to go through people's houses or structures. You could go around houses and add to the measurement if you still get within 1,000 or if you get well under 1,000 without having to necessarily measure straight line because not measuring straight line is going to just add distance to it. Add distance. Right, so you cannot take distance away from a straight line measurement. You can only add to it. So if the distance is still something like 609, it's not straight. So the measurement would be walking with one of those wheels. Right, and if it got close to 1,000, for example, the case where if it was not determined exactly where the one end point was, cannot be determined for certainty, but if it's like 950 and we don't know where that end point is, then that's a reasonable doubt of guilt. 609 versus, you know, how far into the house might it be is so far away from 1,000 that it could leave learners with their common sense and experience to understand how far into that house could be another 400 and, I'm sorry, 300 and roughly, you know, I can't do the math right now, sorry. But there's a long distance there to go into the house away from the point where the officer would have stopped measuring to still be within 1,000. So as it gets much closer to 1,000 feet, though, then the measurement leaves a lot more room for reasonable doubt. And that's why 609, I think, makes this case not appropriate for reversal, whereas if the officer here had measured at 950, I think they would have some serious claim about where that measurement ended and exactly how it took place. I think that would have made a much stronger case for reasonable doubt. With respect to the sentencing argument, their claim is that the lifestyle has been weaponized, the illness as a lifestyle is weaponized as an aggravating factor. But when an issue is forfeited, they have to show clear, obvious error. And it seems like, for the record here, what the trial court was doing was referring mostly to the failure of the defendant to profit from his prior treatment opportunities in prison and still has the substance abuse addiction, which means that when substance abuse addiction is cited as a mitigating factor to the court and the trial court's response is, well, yes, but you've had multiple opportunities in prison to treat your substance abuse addiction, I think then the trial court is allowed to then minimize the weight of that aggravating factor. And so it's not obvious from this record what the trial court was doing was enhancing the sentence as an aggravating factor, for example, as opposed to simply recognizing a reason why that mitigating factor should have less weight than was argued by the defense. And so there's also no clear showing that the trial court somehow punished the defendant for demanding and receiving a trial. So without clear, obvious error, the Defendant's Court forfeiture of those issues should be honored. And just with respect to costs, there has been a new rule, which I have not cited in a motion yet, but in case the court is not aware, Rule 472 does govern the ability of costs issues. The trial courts now have continuing jurisdiction over the issue, and there's a limitation on the appellate court's ability to address that for the first time. And the state had conceded that, and I'm not withdrawing the concession at this point. I just wanted the court to be aware of the new rule, and it might affect the ability of this court to grant the relief on that issue under the state's concession. But as I said, I am not withdrawing the concession. I do believe from my conversations with the circuit clerk that the costs were imposed on a per-count basis and not a per-complaint basis, and that's something that would need to be remedied, whether it's either by this court or by the trial court. That issue is out there. But under the new rule, it's not appropriate for us to consider that. Would you agree? If the rule applies to this pending appeal, which I've not had a chance to research whether that would be the case, my assumption is it would apply, but I don't have any specific analysis or authority for that. But if it does apply, then yes, the Defendant would have to go into circuit court, or the prosecutor would have to go into circuit court and get this corrected. I understand the Defendant's in custody. I don't know how that procedure would work, but that rule is out there, and it may affect my concession, but I'm not officially withdrawing my concession at this time. I would like to thank this court and request deferments on the first two issues. Thank you. Thank you, counsel. By the way, let me just mention real quickly, I thought it was appropriate and professional of you to pursue this before we had the rule done, and I also want to commend Mr. Bernstein for acknowledging that. I thought it was an entirely appropriate thing for you to do in your reply brief, and I thought this was a good example of appropriate professionalism on both your parts. Thank you, Your Honor. Any rebuttal, counsel? With respect to Rule 472, I confess this is the first case I've had which deals with it. I'm not aware of anything at OSAD, anybody else who's dealt with it. If this court chooses to sidestep the issue or, you know, set it aside. Sidestep is probably the wrong word. An accurate description, counsel. And remand it or, you know, however. I don't even know what procedures are in place with respect to 472 is what I'm trying to say, Your Honors. I just want to step back briefly to counsel's comments about the mitigation in sentencing, and she said that the trial court stated that, you know, Mr. Sturgeon failed to profit from prior options. I would like to point, Your Honors, to the pre-sentence investigation report here. There's nothing in there that says that Mr. Sturgeon did not avail himself of options while in prison, or even what those options are, which comes back to my larger point that methamphetamine is a very powerful drug. And this is more of, I guess, a policy statement, but if you're going to treat someone for methamphetamine in prison and then let them loose even on probation, Mr. Sturgeon is an example of what can happen when it's available. This is a very, very powerful addictive drug. And maybe he got all the gold stars on his chart in prison for treatment. We don't know. But the point is, there was no – the judge said he failed to avail himself, and there's no evidence in the record at all, including the pre-sentence investigation, that he failed to avail himself of any of what was available. What are we to do then with differences between drugs? Do we need expert opinion regarding that methamphetamine addiction is so much worse or so much – the dynamic is so much different than heroin addiction or any controlled substance? I mean, I assume that if you're in pain, if that's how your OxyContin addiction starts, that unless the pain is gone, there's just as great a risk of relapse. I don't disagree with you about considering addiction. Some cases have said it's a two-edged sword, but do you treat defendants differently depending on what they're addicted to? I think, actually, this case is an example of how methamphetamine is different. Number one, he came out on probation and started manufacturing and consuming methamphetamine. He lived and slept next to a methamphetamine lab, which the police would not touch without hazmat suits. And I think, you know, that's not to say methamphetamine is the worst, but I think, finally, you can look at what the legislature did. These are Super X felonies, and I think that kind of gives you a layman's answer. Unless you have any other questions, Your Honor, I ask that you grant the relief we requested. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.